**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re: BAYCOL PRODUCTS LITIGATION | ) | MDL No. 1431 (MJD/JGL) |
| This Document Relates to: | ) | Court File No. 02-0058 |
| *Julius Hughes, et al. v. Bayer Corporation, et al.* | ) | |

**PLAINTIFF JULIUS HUGHES' MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS, WITNESSES AND ANSWERS TO INTERROGATORIES**

## I. INTRODUCTION

Plaintiff Julius Hughes is required under the terms of Pre Trial Order 149 ("PTO 149") to complete his case-specific fact discovery by July 31, 2006. However, in a transparent attempt to gain some sort of "tactical advantage," Defendant is flagrantly stonewalling Plaintiff's legitimate attempts at discovery.

After numerous attempts to meet-and-confer with Defendants in good faith, Plaintiff is left with no alternative but to ask the Court's intervention. Accordingly, Plaintiff respectfully requests that the Court counsel Defendant to produce the outstanding discovery set forth below.

## II. STATEMENT OF FACTS

Plaintiff served Defendant with a Request for Production of Documents ("RFP") on May 3, 2006. (Thomason Aff., Ex. A.) After stalling for almost 45 days, Defendant finally gave Plaintiff a grand total of *6 pages* of mostly blank documents. To make matters worse, Defendant Bayer is attempting to rationalize its refusal to substantively respond to Plaintiff's RFP by stating

that PTO 149 does not allow any written discovery.[1]

Plaintiff is having the same lack of luck with his attempts at scheduling depositions. In fact, Defendant has flatly refused to allow Plaintiff to depose a vital witness (again citing "PTO 149" for its refusal), and has deliberately stalled Plaintiff's attempts to depose other important witnesses.[2]

With the July 31 discovery deadline just weeks away, counsel for Plaintiff has attempted time and time again to meet-and-confer on these issues, but by his own admission, defense counsel Kenneth Friedman flatly refuses to take – or return – any of our telephone calls, despite our numerous attempts to contact him.[3] (Thomason Aff., Ex. M.)

Needless to say, if Defendant continues to "game" discovery and ignore Plaintiff's discovery requests, Plaintiff will be unable to conduct the discovery he needs for his case. Plaintiff is therefore left with no alternative but to file this Motion to Compel in the hope that this Court will force Defendant Bayer to comply with its most basic discovery obligations.

## III. LEGAL ARGUMENT

### A. Plaintiff's First Set of Document Requests

Plaintiff propounded Set No. 1 of his Requests for Production of Documents ("RFPs") on May 3, 2006. (Thomason Aff., Ex. A.) On June 2, 2006, Defendant "answered."[4] (Thomason

---

[1] Defendant cites PTO 149 for the strange proposition that that "there is no provision allowing the service of case specific written discovery." (Thomason Aff., Ex. I.)

[2] See discussion of Plaintiff's attempts to schedule the deposition of sales representative Ross Delmendo, and the Bayer Regional Sale Manager, contained *infra*.

[3] Nittin Reddy, an associate at Sidley Austin, did finally call Plaintiff's counsel on July 5, 2006. He apparently called on behalf of Mr Friedman. Despite this call, defense counsel has still not provided Plaintiff with the discovery that he is entitled to.

[4] Defendants took exactly one month to answer Plaintiff's limited Request for Production Set No. 1. Additionally, no actual documents were produced by Defendants when they *did* finally answer. This is one more example of defense counsel's discovery "gamesmanship" (e.g., dragging out discovery in order to force Plaintiff up against the discovery deadline).

Aff., Ex. D.)

In its answer, Defendant cited numerous boilerplate objections, but primarily relied on its own interpretation of PTO 149 to make the untenable assertion that PTO 149 "does not allow case-specific written discovery by any party." *Id.*

Defendant is wrong. PTO 149 clearly contemplates that Plaintiffs will perform "written" fact discovery when it states that "by 7/31/06, case specific fact discovery shall be completed, *including* case specific fact depositions." [Emphasis added.] (Thomason Aff., Ex. P.) Such case specific discovery is a critical part of any lawsuit. Plaintiff's lawsuit is no different. In fact, part of Plaintiff's case hinges on what the Bayer detailing representatives knew, when they knew it, and what they told Plaintiff's medical providers. This is exactly the sort of information that Plaintiff has requested in his Request for Production. Indeed, a brief review of Plaintiff's discovery requests indicates that they were narrowly tailored to seek case-specific information and documents.[5]

To deny Plaintiff the right to this discovery would, for all practical purposes, eviscerate the core of his lawsuit and leave him without a remedy for his harm. Interestingly, it appears that Defendants were not very confident in their own analysis of PTO 149, so instead of "putting their money where their mouth was," by simply not responding to Plaintiff's document requests, they carefully "hedged their bet" by only *partially* responding with numerous boilerplate objections and a few mere token responses.[6]

For example, Plaintiff's Request for Production of Documents No. 1 asks, *inter alia*, for certain documents that relate to Baycol and that were given to Plaintiff's medical providers.

---

[5] There are 14 interrogatories and 22 Requests for Production of Documents. (Thomason Aff., Ex. A, R, S.)

[6] By making the untenable sham assertion that PTO 149 bars all written discovery, Defendants have engaged in yet another delaying tactic, and by definition, another discovery abuse.

(Thomason Aff., Ex. A.) To the best of our knowledge, these case-specific documents were not included in the "6 million" "non-case-specific" documents that Defendant refers to in its response.[7]

With respect to Document Request No. 2, which asks, *inter alia*, for internal records of visits and/or payments to Plaintiff's doctors and provider, Defendant is again resorting to gamesmanship, and thus shirking its obligations. While it is true that Defendant has already produced about 20 pages of "detailing" information (as was already required under PTO 149), their overall response to Request No. 2 is woefully and completely inadequate. This document request seeks more than just detailing dates and names. Plaintiff is also seeking information relating to any sort of compensation paid to Plaintiff's doctor or providers. Such information could potentially include free meals, golf games, honoraria, or any other compensation that was ultimately paid by Defendant Bayer.

Additionally Request No. 2 seeks internal Bayer notes concerning sales visits to Plaintiff's doctors. Again, such information is highly relevant to Plaintiff's case, since it might reveal what the detailing reps told Plaintiff's doctors about the safety and efficacy of Baycol.

Other than the "detailing" information mentioned above (which is required under PTO 149 anyway), Defendants have given Plaintiff absolutely nothing in response to Request No. 2. (Thomason Aff., Ex. D.)

Request No. 3 asks, *inter alia*, for any documents in the possession of Defendant that concern Plaintiff, Plaintiff's family, and/or Plaintiff's doctors. Such documents would obviously

[7] Document Request No. 1 asks for communications between Bayer and Plaintiff's doctors and Plaintiff's health care providers. These are, by definition, case-specific requests. Defendant has deliberately misread Document Request No. 1 to ask for non-case specific documents. Again, this is a text-book tactic, that is delaying discovery by forcing Plaintiff to file this Motion to Compel.

include some documents that may already be in possession of Plaintiff (such as Plaintiff's own medical records), but would also likely include such things as internal corporate memoranda concerning Bayer's investigation of Plaintiff's injuries and his adverse reactions to Baycol, and reports and/or documents filed by Bayer with its insurance carriers, the FDA, etc., that refer to Plaintiff.

In his June 7, 2006, email defense counsel Kenneth Friedman represented that Defendants intended to produce some of the information requested in No. 3. But to date all they have produced are six (6) pages of mostly blank documents (and these were produced two weeks late on June 16, 2006). Furthermore, and as outlined above, despite our numerous phone messages, emails, letters, and faxes, Mr. Friedman refuses to even meet-and-confer on this (or any other) topic. (Thomason Aff., Ex. F, M, N.)

Request No. 4 seeks, *inter alia*, any documents that were given to Dr. Zucker that outlined or summarized health risks associated with Baycol. Defendants responded by referring Plaintiff to the *non-case-specific* documents already produced in this MDL.

By refusing to substantively respond, Defendant again appears to ignore the fact that Plaintiff is requesting "case-specific" documents. Needless to say, as has been their standard game play with the other document requests, Defendant has given Plaintiff nothing.

**B. Plaintiff's Second Set of Document Requests**

Plaintiff propounded his Second Set of Requests for Production of Documents on June 2, 2006. Defendant answered on June 30, 2006. (Thomason Aff., Ex. S.)

Again, Defendant seems unclear on the concept that it is supposed to actually produce any non-privileged, discoverable documents that Plaintiff requests. Instead of producing any documents, Defendant simply objected to each and every request. In some cases, Defendant

promised to produce additional documents at some future date, but did not say when those documents would actually be produced.

In fact, Defendant only had two responses to Plaintiff's Second Request for Production of Documents:

1. Bayer stated that it *might* produce something at some *unspecified* future date, i.e., "Bayer will produce additional documents responsive to this request to the extent that they can be identified, if any exist, relative to the prescribing physician." (Thomason Aff., Ex. S, Nos. 1, 2, 10, 11, 16.)
2. Bayer simply objected and produced absolutely nothing. (Thomason Aff., Ex. S, Nos. 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 17, 18.)

So far, Plaintiff has propounded a total of twenty-two (22) requests for documents in two sets of Requests for Production. Plaintiff's First Request for Production was served over sixty (60) days ago. Since then, Defendant has responded with nothing but spurious objections, empty promises, and six (6) pages of mostly blank documents.

**C. Plaintiffs' Interrogatories To Defendants Bayer Corporation And Bayer A.G.**

Plaintiff propounded his Interrogatories on June 2, 2006. Defendant answered on June 30, 2006.

Rather than provide any new information, Defendant simply rehashed information that was already contained in the PTO-mandated detailing reports. Instead of actually answering the questions presented, Defendant simply reverted to its now standard pattern and practice of relying on canned boilerplate responses. In fact, Bayer's strategy on the Interrogatories appears to be the following:

1. Regurgitate detailing information already provided to Plaintiff pursuant to PTO 149. (Thomason Aff., Ex. R, Nos. 1, 2.)

2. Point Plaintiff to "non-case-specific" discovery that was already produced and is not even what Plaintiff requested. (Thomason Aff., Ex. R, Nos. 3, 6, 7, 8, 11, 12, 13.)

3. Produce nothing, but promises to produce documents or responses at some vague, unspecified "future date." (Thomason Aff., Ex. R, Nos. 5, 8, 10, 11.)

4. Object and simply not answer the question, or claim that the information does not exist. (Thomason Aff., Ex. R, Nos. 3, 4, 9, 12, 14.)

Furthermore, Defendant deliberately misread most of the Interrogatories. For example, Interrogatory No. 1 requests, *inter alia*, the name of any Bayer employees who communicated with Dr. Jing or his employees or affiliated clinic regarding Baycol or any other statin from January 1998 to the present. Defendant Bayer deliberately misreads this question to only refer to Baycol, and it also misreads this question to only cover the period up to August, 2001. As a result, Bayer simply regurgitates information that was already contained in the PTO-mandated detailing information.

In the eight years from 1998 to 2006, it is unlikely that only four Bayer employees ever contacted Dr. Jing (or his clinic, etc.) about Baycol or other statins. It is much more likely that many Bayer employees or agents had some contact with Dr. Jing or his clinic. Some of these witnesses may have valuable information about the manner in which Baycol was promoted, and what information about its efficacy and dangers may have been transmitted to Dr. Jing. At the very least, some of these witnesses may have information that will lead Plaintiff to other discoverable facts.

By refusing to provide the names of these additional witnesses, Defendant is violating its

discovery obligations and preventing Plaintiff from obtaining material information or documents

**D. Sales Representatives Depositions**

Not surprisingly, Plaintiff is having no better luck with his attempts to set deposition dates for the few Bayer witnesses that Defendant has decided to name

Plaintiff seeks to depose, *inter alia*, four Bayer detail representatives ("detail reps") who made sales calls on Dr. Raymond Jing, (Plaintiff's prescribing doctor). In particular, Plaintiff requires the testimony of Ross Delmendo, who appears to have made the vast majority of the sales visits to Dr. Jing. It took Plaintiff nearly a month to even get a date for Mr. Delmendo's deposition, due to outright stalling on the part of Defense counsel.[8]

[8] On May 26, 2006, Plaintiff noticed the deposition for Bayer detail reps Ross Delmendo and Tooanh N. Nguyen. (Thomason Aff., Ex. B.)

On May 30, 2006, Defendant Bayer sent Plaintiff a facsimile concerning Plaintiff's May 26th notices of deposition. In that facsimile, Kenneth Friedman, counsel for Bayer, stated that he was representing Ross Delmendo "for purposes of this litigation." (Thomason Aff., Ex. C.) While Mr. Friedman was very forthcoming with the employment status of Ms. Nguyen, and indeed stated that Ms. Nguyen "no longer works for Bayer," he was not forthcoming at all with Mr. Delmendo's employment status. In fact, at no time did Mr. Friedman admit, suggest, or even imply that Ross Delmendo also "no longer works for Bayer." (*Id.*)

In fact, by stating that Sidley represented Mr. Delmendo for "purposes of this litigation," Mr. Friedman strongly implied that Mr. Delmendo was in fact a current Bayer employee. Mr. Friedman also stated in his May 30 facsimile that he would "inquire" as to whether Mr. Delmendo was available on June 22, and that he would "get back to [us] shortly." (*Id.*)

That did not happen. In fact, it was not until the middle of the following month, on June 14th, that Defendant finally saw fit to "get back" to us. (Thomason Aff., Ex. I.) But instead of proposing an alternate date for Mr. Delmendo's deposition, Mr. Friedman simply wrote that Delmendo was "working [. . .] to find a date." It was in this June 14 missive that Mr. Friedman also finally admitted that Mr. Delmendo was "no longer employed by Bayer."

On June 21st, in response to our numerous letters, email messages and faxes, Mr. Friedman further wrote that "as [Ross Delmendo] no longer works for Bayer, a deposition notice is not effective as to him. If he is not [agreeing to a deposition date] quickly enough for you, *perhaps you should subpoena him*." [Emphasis added.] (Thomason Aff., Ex. M.)

Even more problematic is Bayer defense counsel, Kenneth Friedman's flat refusal to allow Plaintiff to depose the Bayer "Regional Sales Manager." This particular deposition would likely lead to detailed information regarding what Bayer knew about Baycol's dangers, and what sort of messages regarding those dangers were given to Bayer's detail reps and Plaintiff's doctor(s). In addition, the Regional Sales Manager would most likely be privy to corporate policy and other information denied to his or her subordinates. Defendant cites PTO 149 as its reason for refusing to give Plaintiff the name of the Regional Sales Manager.

But there is absolutely nothing in PTO 149 to justify this refusal. We have attempted to meet and confer on this very issue, but Mr. Friedman and his firm have simply ignored our numerous phone calls, emails, and letters. (Thomason Aff., Para 21, and Ex. E, G, H, L, N.)

## IV. CONCLUSION

Defendant has refused to provide any substantive responses to either of Plaintiff's Requests for Production of Documents. In fact, Defendant is actually "playing games" with Plaintiff's discovery. After two months of discovery, and twenty-two (22) document requests, contained in two sets of Requests for Production of Documents, Defendant has produced a grand total of six pages of mostly blank documents.

Defendants "gaming" continues with Plaintiff's interrogatories. Rather than actually answering the questions in those interrogatories, Defendants either objected, rehashed old information, or made vague promises to produce information at "some future date."

---

After waiting more than three weeks for defense counsel to set a deposition date for Mr. Delmendo, we were finally forced, by Defendant's foot-dragging, to subpoena Mr. Delmendo on June 22, and will belatedly be deposing him on July 12th. This delay has hurt the Plaintiff because it will not leave us much time to conduct follow-up discovery and depositions.

Since the discovery cut off date of July 31, 2006, is only about two weeks after Mr. Delmendo's deposition, all of Plaintiff's follow up depositions will have to occur on either July 27, or July 28. This leaves no room for rescheduling.

Defendants, in fact have gone so far as to deny that Plaintiff even has the right to any such discovery. (Thomason Aff., Ex. I.)

Defendants are now also asserting that PTO 149 limits who Plaintiff can depose. According to Defendants' own self-serving reading of PTO 149, "sales reps" can be deposed, but "Regional Sales Managers" cannot be deposed. *Id.*

It is for the above reasons that Plaintiff asks this court to do the following:

1. Issue an order clarifying the fact that PTO 149 does not bar written discovery.
2. Order the Defendants to fully answer all of the twenty-two (22) document requests in Plaintiff's Request for Production of Documents Sets No. 1 and 2.
3. Order the Defendants to produce for deposition the Bayer Regional Sales Manager as Plaintiff has requested.
4. Grant a Protective Order that would stay the taking of any pending depositions until fourteen (14) days after Defendants produce all documents referenced in this motion.
5. Extend the discovery cut-off date so that Plaintiff can complete the discovery that he is entitled to.
6. Order Defendants to pay Plaintiff's costs for this motion.

Furthermore, if Defendant does not immediately provide Plaintiff with the discovery that Plaintiff seeks in this motion, Plaintiff asks to court to exercise its inherent power to impose the following sanctions:

1. Order an "adverse inference" instruction to the jury at the start of

Plaintiff's trial.

2. Order that certain issues, to be determined by this court, be established in favor of Plaintiff.

3. Order that certain evidence, to be determined by this court, be excluded in favor of Plaintiff.

Dated: July 7, 2006

Respectfully submitted,

Original Signature on File with Filing Attorney.

Kevin L. Thomason
ALEXANDER, HAWES & AUDET, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.982.1776
Facsimile: 415.576.1776

*Attorneys for Plaintiff*

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I am employed in the County of San Francisco, State of California; my business address is 221 Main Street, Suite 1460, San Francisco, California 94105. I am over the age of 18 and not a party to the within action. On this date a true and correct copy was electronically served on attorneys of record and liaison counsel:

**PLAINTIFF JULIUS HUGHES' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS, WITNESSES AND ANSWERS TO INTERROGATORIES**

on the parties shown below:

(*See attached service list.)*

☐ (BY FAX) I am readily familiar with the firm's practice of facsimile transmission; on this date the above-referenced documents were transmitted, the transmission was reported as complete and without error and the report was properly issued.

☐ (BY MAIL) I am readily familiar with the firm's practice for the processing of mail; on this date, the above-referenced documents were placed for collection and delivery by the U.S. Postal Service following ordinary business practices.

☐ (BY ELECTRONIC FILING) On this date I provided the documents(s) listed above electronically through the Court's electronic filing service provider pursuant to the instructions on that website.

[X] (BY E-MAIL) On this date, the above-referenced documents were converted to electronic files and e-mailed to the addresses shown.

☐ Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on this 7th day of July, 2006, at San Francisco, California.

Original Signature on File with Filing Attorney.

Kenneth E. Friedman
Susan A. Weber
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles CA 90013
Telephone: 213.896.6000
Facsimile: 213.896.6600
kfriedman@sidley.com
sweber@sidley.com
baycoldps@sidley.com

Deanna D. Daily
LARSON KING
2800 Minnesota World Trade Center
30 East Seventh Street
St. Paul MN 55101
Telephone: 651.312.6500
Facsimile: 651.312.6618
ddaily@larsonking.com

Philip S. Beck
Adam Hoeflich
BARTLIT, BECK, HERMAN,
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago IL 60610
Telephone: 312.494.4411
Facsimile: 312.494.4440
philip.beck@bartlit-beck.com
adam.hoeflich@bartlit-beck.com

Kathryn Connelly
Fred T. Magaziner
DECHERT LLP
4000 Bell Atlantic Tower
Philadelphia PA 19103-2793
Telephone: 215.994.4000
Facsimile: 215.994.2222
kathryn.connelly@dechert.com
fred.magaziner@dechert.com
baycoldep@dechert.com

Thomas Moore
Mario Horwitz
DRINKER BIDDLE & REATH LLP
333 South Grand Avenue, Suite 1700
Los Angeles CA 90071-1594
Telephone: 213.253.2300
Facsimile: 213.253.2301
thomas.moore@dbr.com
mario.horwitz@dbr.com