UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAYCOL PRODUCTS LITIGATION | MDL No. 1431 (MJD/JGL) |
| This Document Relates to: | Court File No. 02-0058 |
| *Julius Hughes, et al. v. Bayer Corporation, et al.* | |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS, WITNESSES AND ANSWERS TO INTERROGATORIES**

## I. INTRODUCTION

Defendant's Opposition to Plaintiff Hughes Motion to Compel is full of errors and untruths. Rather than attempt to address the substantive issues raised in Plaintiff's Motion to Compel, Defendant's Reply sidesteps them entirely.

First, Plaintiff <u>did indeed</u> move to compel Interrogatories:

> "[Plaintiff asks the court to] issue an order which [. . .] requires Defendant Bayer Corporation to answer, without objection, Plaintiff's First Set of Interrogatories. (Thomason Aff., Ex. 4).

Second, Defendant's baseless assertion that it has "more than complied" with its discovery obligations is an utter falsehood. The reality, as outlined below and detailed in Plaintiff's Motion to Compel, is that the Defendant has ignored virtually all of Plaintiff's narrowly-tailored and case-specific discovery requests. These requests are reasonably calculated to lead to the discovery of admissible evidence. Furthermore, they seek documents that cannot be obtained elsewhere, and which directly relate to Plaintiff's case.

Third, Defendant's flat refusal to provide plaintiff with the names of pertinent Bayer witnesses meant that Plaintiff was unable to identify, locate and depose an important Bayer

manager until July 31, 2006 -- i.e., the very last day of case-specific discovery. Furthermore, since Bayer has essentially produced no case-specific documents to Plaintiff, counsel has been forced to proceed virtually "blind" into depositions, and is being denied the opportunity to authenticate produced documents, formulate deposition questions based on those documents, and conduct additional discovery as a result of information contained in those documents. Please see detailed discussion below.

## II. BAYER HAS NOT COMPLIED WITH ITS WRITTEN DISCOVERY OBLIGATIONS.

### A. Interrogatories

Defendants do not deny that their interrogatory responses are insufficient. Instead, Defendants make the wild assertion, as outlined above, that Plaintiff has not even moved to compel the Interrogatories. This is simply untrue. (Thomason Aff., Ex. 4).

Plaintiff moved to compel the Interrogatories because Defendant Bayer did not fully answer them. For example, Interrogatory No. 1 seeks the identity of all Bayer employees, agents, *et al*, that communicated with Plaintiff Hughes' prescribing doctor and/or his office regarding Baycol. (See Ex. R to Plaintiff's Motion to Compel). Defendant Bayer responded to this request by naming only the four Bayer Sales Reps that were named in the PTO 149-mandated detailing information. This is not responsive. According to deposition testimony, Ross Delmendo, who was the Baycol Sales Rep for Plaintiff's prescribing doctor, was sometimes accompanied on sales calls by the Bayer Regional Sales Manager, Josue Bencito, among others. (Thomason Aff., Ex. 1, pp. 85-86, Ex. 2 pp. 81-82). It is thus likely that other Bayer employees besides the four named Sales Reps called on Plaintiff's prescribing doctor. The responses to the other thirteen Interrogatories are equally insufficient. (See Ex. R to Plaintiff's Motion to Compel).

Defendant's lack of response to Plaintiff's Interrogatories is perhaps the most egregious of their discovery abuses. As stated in Plaintiff's Motion to Compel, Defendants either:

1. Regurgitate detailing information already provided to Plaintiff pursuant to PTO 149. (Motion to Compel, Thomason Aff., Ex. R, Nos. 1, 2.)

2. Point Plaintiff to "non-case-specific" discovery that was already produced and is not even what Plaintiff requested. (Motion to Compel, Thomason Aff., Ex. R, Nos. 3, 6, 7, 8, 11, 12, 13.)

3. Produce nothing, but promise to produce documents or responses at some vague, unspecified "future date." (Motion to Compel, Thomason Aff., Ex. R, Nos. 5, 8, 10, 11.)

4. Object and simply not answer the question, or claim that the information does not exist. (Motion to Compel, Thomason Aff., Ex. R, Nos. 3, 4, 9, 12, 14.)

Defendant's totally inadequate Interrogatory responses speak for themselves.[1]

**B. Requests for Production of Documents**

By its own admission, Bayer did not actually produce any documents until June 16, 2006 – fully two weeks *after* those documents were due to Plaintiff. And, as stated before, Bayer only produced six pages of mostly blank documents.[2] The sad fact that Defendant gave Plaintiff only six mostly-redacted documents in response to Plaintiff's twenty-two Requests for Production, is stunning evidence of their bad faith discovery abuse. Recent deposition testimony strongly

---

1 Yet another example of Defendants lack of response is contained in their answer to Interrogatory No. 4, which asks for certain financial information regarding compensation paid (or given) to Plaintiff's prescribing doctor. Bayer flatly states that this information does not exist. Yet, it <u>must</u> exist, since such compensation paid as part of marketing (such as free dinners, etc.) is tax deductible, and such tax records must be kept for a number of years. It is the author's opinion that Bayer would <u>instantly</u> produce such receipts and other records if it were being audited by the IRS.

2 Bayer also "re" produced the 20 pages of detailing information that it had previously produced under PTO 149.

indicates that Defendant Bayer is sitting on a veritable mountain of un-produced documents:

Q. When you left the employ of Bayer, were you instructed to destroy all of your documents?

A. No, we were instructed to return all Bayer documents.

Q. And did you return those via UPS?

A. I don't recall. UPS or Fed Ex.

[. . .]

Q. Did Bayer have any sort of document retention policy?

A. Yes.

Q. What was their document retention policy?

A. I'm not sure about the number of years, but they instructed us to retain or return all documents.

Q. Retain or return?

A. Take it back. Return all the documents, not retain.

Q. And when you returned all of your documents to Bayer at the end of your employ in late 2004, did you also return any notes that you may have made, handwritten notes?

A. More than likely. I just don't recall what kind of documents I returned. It's been quite a while.

Q. And, in fact, did they ask for you to return your handwritten notes?

A. They did ask.

Q. And is it fair to say that they asked you to return every single document that you had?

A. Yes.

Q. And did you, in fact, return ever single document that you had?

A. To the best of my ability.

Deposition of Josue Bencito (rough transcript, pp.87-89), Ontario California, July 31, 2006 attached. (Thomason Aff., Ex. 1).

It is inconceivable that Bayer would simply destroy all these documents after going through the trouble to have them shipped back. Additionally, the Internal Revenue Service requires corporations to keep their financial records for a certain number of years.[3] Given the above, it is likely that these documents still exist.

Even the twenty pages of PTO-mandated "detailing information" supplied by Defendants is sorely deficient. Indeed, the "detailing information" (a.k.a., "MACS Database Report") supplied by Defendants shows only the (1) doctor's name, (2) the doctor's address, and (3) the date of the sales call.[4] Yet recent testimony indicates that much more information was actually entered into the MACS Database. Josue Bencito, the Bayer Regional Sales Manager during the relevant time period, has stated under oath that the sales representatives were trained to enter a wide variety of additional information into the database. This information included, *inter alia*, (1) the number of samples provided, (2) any discussion regarding the product, (3) materials that were used in the sales call, (4) questions about the product, and (5) how those questions were answered:

> Q. When a sales associate would call on a doctor and would record their call into their database, which was subsequently synchronized with the one in West Haven, what information would they put into that database?
>
> A. The date of the call; the number of samples that they had left; any relevant or pertinent discussion regarding the product.
>
> Q. So that's three items of information. Would there be additional information?
>
> A. Maybe the materials that the rep used in the presentation; if he has left some samples; file cards; what clinical paper, maybe, he has used in the presentation; maybe if the doctor has a question, he might record that, and how he answered that question.

3 Payroll records, for example, should be kept for 4 years. See e.g., http://www.irs.gov/govt/tribes/article/0,,id=134973,00.html#1

4 *See*, Exhibit O to Plaintiff's Motion to Compel.

Deposition of Josue Bencito (rough transcript, P.36), Ontario California, July 31, 2006, attached hereto as Exhibit 1 to the Affidavit of Kevin Thomason.[5]

The fact that the MACS Database contained more than names and dates is reiterated in the sworn deposition of Ross Delmendo, a Bayer Sales Rep who was supervised by Mr. Bencito. In a recent deposition, Mr. Delmendo confirmed that such "notes" information, was in fact entered into a database:

> Q. Okay. And what would you report?
>
> A. The name of the doctor. I would enter it in my -- in -- we have a -- the company uses a software where I can -- where I can enter the name of the doctor and the date and the -- the samples or the products that I -- I talked about.
>
> Q. Uh-huh.
>
> A. And the samples that I left with the doctor, if I left a sample.
>
> Q. Okay. The amount of the samples too?
>
> A. And the number of the samples.

Deposition of Ross Delmendo, July 12, 2006, pp. 64-66. (Thomason Aff., Ex. 2).

Additionally, the fact that the MACS database contained additional data was confirmed by yet another deposition (Thomason Aff., Ex. 3):[6]

> Q. And do you have any sense of what the MACS at the top, M-A-C-S stands for?
>
> A. Oh, that's our -- that was my system that I'm on. MACS.

---

5 After a break, and a meeting with his counsel, the deponent asked to go back on the record and clarify part of his testimony. He then added that he wasn't sure that the database could actually record notes, and he wasn't sure if it was actually called "MACS." The rough transcript is being cited because the final transcript is not yet available. (Thomason Aff., Para. 8).

6 This recent deposition was taken in a different Baycol case (Norma Andersen v. Bayer A.G., et al, Case No. 02-3742). The rough transcript is being cited because the final transcript is not yet available. (Thomason Aff., Para. 5).

[. . .]

Q. What -- what other data did you enter into MACS?

A. Sample calls, whom we called on, and what we -- what we talked about. It would list the drugs and it would check off what you talked.

Q. What about call notes?

A. We could enter call notes if we wanted to.

Deposition of former Bayer Sales Rep, Stacy Horst (rough transcript), July 17, 2006, pp. 131.

(*Id.*)

The above sworn testimony very strongly suggests that Bayer is holding back additional information, and Plaintiff is entitled to this information.

## III. BAYER HAS "GAMED" THE DEPOSITIONS.

Regarding depositions, Defendants "gamed" the discovery process by unilaterally deciding that the only Bayer witnesses it would divulge were the four Bayer Sales Reps that called on Plaintiff's doctor. For some reason, Defendant unilaterally decided that the Bayer Sales Managers were "off-limits" to Plaintiff. As a result of this, Plaintiff had to first depose a Sales Rep to get the name of his boss, the Bayer Regional Sales Manager. As Defendant admits, this deposition was scheduled for (and took place on) July 31. 2006. This of course was the last day of the discovery period. Plaintiff is now left without recourse, since he cannot conduct additional follow up discovery based on the testimony of this very important witness.

If Defendant had simply given Plaintiff the name of the Bayer Regional Sales Manager when Plaintiff had asked for it, Plaintiff's counsel could have deposed that witness in time to schedule follow up depositions. But Defendant didn't do that, despite Plaintiff's repeated

requests. And as a result, Plaintiff is now left without the ability to conduct any follow up depositions, or other discovery for that matter. Furthermore, as outlined above, since Bayer has essentially produced no case-specific documents to Plaintiff, counsel has been forced to proceed virtually "blind" into depositions. Plaintiff is also being denied the opportunity to authenticate produced documents, formulate deposition questions based on those documents, and conduct additional discovery as a result of information contained in those documents.

## IV. CONCLUSION

Contrary to Bayer's assertion, it has **not** "more than complied" with its discovery obligations. In fact, it has done everything possible *not to comply*. It has given plaintiff virtually no documents (for the sad corpus of Defendants' so-called "document production," please see Exhibits K and O to Plaintiff's Motion to Compel).[7] Its Interrogatory responses were evasive and incomplete.

Furthermore, as outlined in Plaintiff's Motion to Compel, Defendants have not-so-subtly "gamed" the deposition scheduling process, thereby delaying the Bayer Regional Sales Manager deposition until the very last day of discovery.

Plaintiff is entitled to the discovery he requested, Because Bayer has not complied with its discovery obligations, Plaintiff respectfully asks the court to order the following:

1. Issue an order clarifying the fact that PTO 149 does not bar written discovery.

2. Order the Defendants to fully answer the twenty-two (22) document requests in Plaintiff's Request for Production of Documents Sets No. 1

---

[7] On July 31, 2006 at Josue Bencito's deposition, counsel for Defendant Bayer "re-produced" 17 pages of documents, these documents consisted of the August 8, 2001 "dear doctor" letter (BAYCORP00263761) and a several Baycol package inserts (BAYCORP01349349-50; 00221085-86; 00280784-85; 00226962-63; 00031829-30; 00052676-78; 00146205-07). These documents appear to have been previously produced in this MDL, are not case-specific in any way, and are not responsive to any of Plaintiff's current document requests.

and 2, and the fourteen (14) Interrogatories propounded by Plaintiff.

3. Grant a Protective Order that would allow the re-deposition of any previously deposed current or ex-Bayer employees, starting immediately after Defendants produce all documents and information referenced in this motion.

4. Extend the discovery cut-off date so that Plaintiff can complete the discovery that he is entitled to.

5. Order Defendants to pay Plaintiff's costs for this motion.

Furthermore, if Defendant does not immediately provide Plaintiff with the discovery that Plaintiff seeks in this motion, Plaintiff asks to court to exercise its inherent power to impose the following sanctions:

1. Order an "adverse inference" instruction to the jury at the start of Plaintiff's trial.

2. Order that certain issues, to be determined by this court, be established in favor of Plaintiff.

3. Order that certain evidence, to be determined by this court, be excluded in favor of Plaintiff.

Dated: August 11, 2006

Respectfully submitted,

Kevin L. Thomason
ALEXANDER, HAWES & AUDET, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.982.1776
Facsimile: 415.576.1776

*Attorneys for Plaintiff*

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco, State of California; my business address is 221 Main Street, Suite 1460, San Francisco, California 94105. I am over the age of 18 and not a party to the within action. On this date a true and correct copy was electronically served on attorneys of record and liaison counsel:

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS, WITNESSES AND ANSWERS TO INTERROGATORIES**

on the parties shown below:

*(See attached service list.)*

[ ] (BY FAX) I am readily familiar with the firm's practice of facsimile transmission; on this date the above-referenced documents were transmitted, the transmission was reported as complete and without error and the report was properly issued.

[ ] (BY MAIL) I am readily familiar with the firm's practice for the processing of mail; on this date, the above-referenced documents were placed for collection and delivery by the U.S. Postal Service following ordinary business practices.

[ ] (BY ELECTRONIC FILING) On this date I provided the documents(s) listed above electronically through the Court's electronic filing service provider pursuant to the instructions on that website.

[X] (BY E-MAIL) On this date, the above-referenced documents were converted to electronic files and e-mailed to the addresses shown.

[X] Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on this 11 th day of August, 2006, at San Francisco, California.

Steve Garrett

Kenneth E. Friedman
Susan A. Weber
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles CA 90013
Telephone: 213.896.6000
Facsimile: 213.896.6600
kfriedman@sidley.com
sweber@sidley.com
baycoldps@sidley.com

Deanna D. Daily
LARSON KING
2800 Minnesota World Trade Center
30 East Seventh Street
St. Paul MN 55101
Telephone: 651.312.6500
Facsimile: 651.312.6618
ddaily@larsonking.com

Philip S. Beck
Adam Hoeflich
BARTLIT, BECK, HERMAN,
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago IL 60610
Telephone: 312.494.4411
Facsimile: 312.494.4440
philip.beck@bartlit-beck.com
adam.hoeflich@bartlit-beck.com

Kathryn Connelly
Fred T. Magaziner
DECHERT LLP
4000 Bell Atlantic Tower
Philadelphia PA 19103-2793
Telephone: 215.994.4000
Facsimile: 215.994.2222
kathryn.connelly@dechert.com
fred.magaziner@dechert.com
baycoldep@dechert.com

Thomas Moore
Mario Horwitz
DRINKER BIDDLE & REATH LLP
333 South Grand Avenue, Suite 1700
Los Angeles CA 90071-1594
Telephone: 213.253.2300
Facsimile: 213.253.2301
thomas.moore@dbr.com
mario.horwitz@dbr.com