**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *Julius Hughes v. Bayer AG, et al.* | : | Case No. 02-0058 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION AND FOR SUMMARY JUDGMENT**

Defendants move for an order denying class certification in the action brought by plaintiff Julius Hughes, who seeks relief (including medical monitoring) on behalf of a putative class of all former users of Baycol. *See In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 162 (D. Minn. 2000) (recognizing that "[a]ny party may move for a class determination under Rule 23(c)(1)"); Pretrial Order ("PTO") 4 § IV.E (requiring plaintiffs to file motions and supporting briefs seeking class certification in 2002).[1] This Court already has denied certification of classes that consisted of all former users of Baycol because of the predominance of individual issues. *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 211-14 (D. Minn. 2003). The facts of this case merely confirm the correctness of that ruling. Furthermore, plaintiff is not an

[1] *See also Thompson v. Merck & Co., Inc.*, Nos. C.A. 01-1004, *et al.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (granting motion to strike before plaintiff had moved to certify because it was "clear" plaintiff could not satisfy Rule 23 and "[n]o amount of additional class discovery will alter this conclusion"); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (recognizing that a motion to strike can be used to "test the viability of a class at the earliest pleading stage of the litigation") (collecting cases). *See generally Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim").

adequate class representative and does not assert claims typical of the absent class members he purports to represent. *See infra*, Argument, Part I.B.

Defendants also move for judgment on each of plaintiff's individual claims on three separate grounds:

- *First*, Bayer warned of the exact side effects that plaintiff alleges that Baycol caused, and therefore, under California law, he cannot maintain an action based upon an alleged failure to warn. *See infra*, Argument, Part II.A.[2]

- *Second*, the physician who prescribed Baycol to plaintiff already was aware of the potential for muscle aches and pains as a result of taking a statin such as Baycol. Any purported inadequacy in the warnings for Baycol thus was not the cause of plaintiff's alleged injuries. *See infra*, Argument, Part II.B.

- The above two arguments also dispose of plaintiff's unjust enrichment claim because plaintiff obtained the benefit of his bargain – a prescription drug with adequate warnings. *See Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (a party who "received exactly what they paid for" is not entitled to restitution); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (unjust enrichment is "synonymous with restitution").

- *Third*, medical monitoring is not a cognizable claim under California law, and plaintiff cannot recover medical monitoring as a form of damages because he lacks the requisite case-specific expert testimony. *See infra*, Argument, Part II.C.

---

[2] As this Court has held, "federal courts apply the choice of law rules of the forum state" (in this case California) to substantive issues. *In re Baycol Prods. Litig.*, 218 F.R.D. at 207. Plaintiff is a California resident who was prescribed Baycol in California, took Baycol in California, and was allegedly injured in California. Under California choice of law rules, California substantive law governs his claims and other substantive issues in this action. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920-21 (2001); *In re Baycol Prods. Litig.*, 218 F.R.D. at 207.

Therefore, this Court should enforce and reaffirm its master class certification ruling by denying certification of this putative class action, and enter summary judgment against plaintiff Julius Hughes as to his individual claims.

## STATEMENT OF FACTS

### I. PLAINTIFF'S PRE-EXISTING MEDICAL CONDITIONS AND USE OF BAYCOL.

Plaintiff Julius Hughes is a 74-year-old man with a pre-Baycol history of insulin-dependent diabetes, hypertension, and high cholesterol. Deposition of Raymond Jing ("Jing Dep.") (Ex. A) at 16:15-17:8. In March 2001, plaintiff's "total cholesterol was 239, his HDL cholesterol was 57, and his LDL cholesterol was 160." *Id*. at 17:9-13. According to Dr. Raymond Jing, plaintiff's physician, these cholesterol levels were elevated, especially for a diabetic: "the goal for diabetics for LDL cholesterol is less than a hundred, and the goal for LDL cholesterol in patients that don't have cardiac risk factors is less than 130. So the 160 exceeded both goals for the LDL cholesterol." *Id*., at 17:14-20. Given plaintiff's risk factors for cardiovascular disease, Dr. Jing determined that controlling plaintiff's cholesterol would yield significant health benefits: "high cholesterol is a significant risk factor for development of cardiovascular disease, but it's even a worse problem in diabetics than it is in a non-diabetic." *Id*., at 20:21-25.

In March 2001, Dr. Jing prescribed plaintiff 0.4 mg Baycol to control his high cholesterol, and plaintiff remained on Baycol until August 2001. Jing Dep. (Ex. A) at 17:24-18:1; Deposition of Julius Hughes ("Hughes Dep.") (Ex. B) at 58:5-6, 61:20-25. Dr. Jing prescribed Baycol because he believed its benefits outweighed its risks. Jing

Dep. (Ex. A) at 23:16-24. Dr. Jing was aware that muscle pains, myalgias, myopathy, and rhabdomyolysis were possible side effects of Baycol. *Id.*, at 18:24-20:10. According to Dr. Jing, the "[m]ost common side effect" associated with statin medications such as Baycol is "muscle aches" – "also known as myalgias." *Id.*, at 18:9-17.

Dr. Jing's "common practice" has been "to inform patients about the possible side effects of medicines as [he] prescribes them." *Id.*, at 22:21-24. Dr. Jing educates patients about "the most common side effects for statins. Those side effects include muscle aches as really the predominant symptom that they might experience." *Id.*, at 23:2-11. Plaintiff also testified that he read a "brochure from the drugstore" that discussed the possible side effects of Baycol. Hughes Dep. (Ex. B) at 60:10-25. According to plaintiff, the brochure disclosed that Baycol "had its ups and downs" and listed "many side effects." *Id.*, at 61:1-9.

## II. PLAINTIFF'S INDIVIDUAL CLAIMS AND THE CLASS ALLEGATIONS.

Plaintiff filed this putative class action in the District of Minnesota on January 9, 2002. The Complaint seeks recovery on behalf of "[a]ll persons in the United States who used Baycol" for: (1) strict products liability (failure to warn); (2) strict products liability (design defect); (3) negligence; (4) breach of express warranty; (5) breach of implied warranty; (6) medical monitoring (injunctive and equitable relief); and (7) unjust enrichment. Compl. ¶¶ 24, 33-71. The Complaint seeks general damages, medical expenses, lost wages, medical monitoring, refunds, compensatory damages, consequential damages, and punitive damages. *Id.*, at Prayer for Relief.

At his deposition, plaintiff claimed to have experienced gas pain, stomach pain, shortness of breath, low back pain, dark urine, and bed wetting due to Baycol. Hughes Dep. (Ex. B) at 62:14-20, 63:13-23, 67:16-68:2. Plaintiff's case-specific expert, Dr. Steven Trobiani, opined that plaintiff experienced only "myalgia secondary to the use of Baycol." Deposition of Dr. Steven Trobiani ("Trobiani Dep.") (Ex C) at 11:14-20; *see also* Case Specific Medical Expert Report Pursuant to PTO 114 of Steven Trobiani, M.D. (Ex. D) ¶ 5. Specifically, Dr. Trobiani opined that plaintiff experienced "pain in his lower back" for "a week" in August 2001 "when he would turn over in bed." Trobiani Dep. (Ex. C) at 13:12-16, 15:9-16:6. Dr. Trobiani would not opine that plaintiff experienced any other adverse reactions from Baycol. *Id*., at 16:15-17, 17:3-6, 17:15-17, 19:13-20:8. Dr. Trobiani also refused to opine that plaintiff has any permanent injury as a result of using Baycol (*id*., at 20:9-14), or that he "requires ongoing medical follow-up for any Baycol-related injury" (*id*., at 21:16-19).

## ARGUMENT

### I. CLASS CERTIFICATION SHOULD BE DENIED.

Class certification is inappropriate and should be denied. Only if plaintiff could establish all of the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and demonstrate that a class could be maintained under Rule 23(b)(3) – by proving that common issues of fact and law predominate and that class litigation is superior – could a class be certified. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Plaintiff cannot do so here because, among other things:

- The claims in this case raise predominantly individual questions of fact and law. Indeed, this Court and numerous other courts have rejected certification of class actions in prescription pharmaceutical cases due to the predominance of individual issues. *See In re Baycol Prods. Litig.*, 218 F.R.D. at 207-14.

- Plaintiff is not typical of, or an adequate representative for, the absent class members. *See id*., at 205-06, 211, 214.

For each of these reasons, the Court should deny class certification.

**A. Individual Issues Predominate.**

As this Court has previously ruled, product liability class actions such as this one are inappropriate for certification due to the predominance of individual issues. *In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14. That decision was and is consistent with the great weight of authority. *See, e.g.*, *Zehel-Miller v. Astrazenaca Pharms., LP*, 223 F.R.D. 659, 662-64 (M.D. Fla. 2004) (denying certification of putative class of all "persons who purchased and/or ingested Seroquel" as "manifestly inappropriate"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002) (rejecting personal injury, refund, and medical monitoring classes); *In re Phenylpropanolamine ("PPA") Prods. Liab. Litig.*, 208 F.R.D. 625 (W.D. Wash. 2002) (rejecting injury, risk of injury, fear of injury, and refund classes). "To date, no Court of Appeals decision has approved class certification of an action involving prescription drugs." *Sweet v. Pfizer*, 232 F.R.D. 360, 372-73 (C.D. Cal. 2005) (*quoting In re Baycol Prods. Litig*., 218 F.R.D. at 204). "In fact, no federal district court has certified a multi-state class alleging products liability and medical monitoring for a pharmaceutical drug." *In re Prempro Prods. Liab. Litig*., 230

F.R.D. 555, 571 (E.D. Ark. 2005). The Court therefore should reaffirm its prior ruling and reject this putative class of all former users of Baycol.

**1. Individual issues predominate for any injury class.**

Because the putative class includes "[a]ll persons who used Baycol," it necessarily includes persons with personal injury claims. Courts invariably have concluded that personal injury claims raise an overwhelming number of individual issues. *Sweet*, 232 F.R.D. at 372-73; *Zehel-Miller*, 223 F.R.D. at 663-64; *In re Baycol Prods. Litig.*, 218 F.R.D. at 205-10; *Rezulin*, 210 F.R.D. at 66-68; *PPA*, 208 F.R.D. at 630-33. "No matter how you cut it, cube it, or slice it," there is no way to untangle the individual issues of fact and law surrounding causation and damages in a personal injury class action related to pharmaceutical medications. *In re Prempro*, 230 F.R.D. at 573; *In re Baycol Prods. Litig.*, 218 F.R.D. at 205-10; *Rezulin*, 210 F.R.D. at 66-68. This is particularly true where, as here, a nationwide putative class involves the laws of all fifty states, which "only compounds" the predominance of individual issues. *Rezulin*, 210 F.R.D. at 69-71; *In re Baycol Prods. Litig.*, 218 F.R.D. at 207-08.

Plaintiff's claims illustrate the inherently individualized nature of the inquiry and the correctness of this Court's prior ruling denying certification. Plaintiff allegedly experienced one week of low back pain in August 2001, five months after initiating 0.4 mg Baycol therapy. Trobiani Dep. (Ex. C) at 13:12-16, 15:9-16:6. Absent class members took different doses of Baycol for different periods of time, reported different symptoms at different points in time after initiating (or ceasing) Baycol therapy, were prescribed Baycol when different labels were in effect, and took Baycol in

combination with different medications. *See In re Baycol Prods. Litig.*, 218 F.R.D. at 205-06. These and other differences between plaintiff's claim and those of absent class members could be listed "*ad infinitum*." *Rezulin*, 210 F.R.D. at 69.

The Court therefore should deny certification of this putative class as "indisputably inappropriate, since individual issues would overwhelm any common questions." *Zehel-Miller*, 223 F.R.D. at 663.

**2. Individual issues predominate for an economic loss class.**

This putative class also encompasses persons who would seek recovery for purely economic losses. Any such class of persons would be no different from other economic loss classes held to be inappropriate for class treatment due to the predominance of individual issues. *Sweet*, 232 F.R.D. at 372-73; *Zehel-Miller*, 223 F.R.D. at 664; *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *Rezulin*, 210 F.R.D. at 66-68; *PPA*, 208 F.R.D. at 633.

Economic loss claims, like personal injury claims, are governed by the laws of all fifty states. *In re Baycol Prods. Litig.*, 218 F.R.D. at 207-08. The differences in state laws alone would "swamp any common issues and defeat predominance." *Id.*, at 208 (internal quotations omitted). Moreover, at a minimum, to recover the purchase price of Baycol, a plaintiff "would have to demonstrate that [he and absent class members] were either injured by Baycol, or that Baycol did not provide them any health benefits." *See In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14; *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 338-39 (1998) (dismissing claim for restitution because plaintiffs "received *exactly what they paid for*" (emphasis in original); *Dunkin v. Boskey*, 82 Cal. App. 4th

171, 198 (2000) (recognizing right to "offset" benefits provided against unjust enrichment claim); *Intervention, Inc. v. Warner-Lambert Co.*, Judicial Council Coordinated Proceeding No. 4122 (*In re Rezulin Litig.*), Case No. C-01-0977, Order at pp. 8-9 (April 29, 2003) (Ex. E)[3] (dismissing unfair competition claim because plaintiffs did not prove drug was ineffective or harmful). The "question whether an individual class member got his or her money's worth" or was injured "is inherently individual." *Rezulin*, 210 F.R.D. at 69. Among other things, one would need to examine a person's medical history, determine the dosage(s) and period(s) of Baycol therapy, identify pre-existing conditions, consider possible drug-drug interactions, rule out alternative causes, determine cholesterol levels before, during, and after Baycol use, and factor in diet and exercise. *See Rezulin*, 210 F.R.D. at 68-69; *PPA*, 208 F.R.D. at 631.

These and innumerable other differences among the claims of absent class members explain why courts reject certification of economic loss classes in prescription pharmaceutical cases. *Sweet*, 232 F.R.D. at 372-73; *Zehel-Miller*, 223 F.R.D. at 664; *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *Rezulin*, 210 F.R.D. at 66-68; *PPA*, 208 F.R.D. at 633; *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("the claim of unjust enrichment is packed with individual issues and would be unmanageable"). The Court therefore should, once again, deny certification here.

---

[3] *Intervention* was decided before a November 2004 amendment to California law, which *increased* the standing requirements for unfair competition and false advertising claims to require proof of "an injury in fact … as a result of" wrongful conduct. Cal. Bus. & Prof. Code §§ 17203, 17204. These amendments apply to pending actions. *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006).

**3. Individual issues predominate for a medical monitoring class.**

Plaintiff also seeks medical monitoring for the putative class. This Court has correctly determined that medical monitoring in and of itself "destroy[s] the cohesive nature of the class claims" because it requires a case-by-case analysis of the past and present medical history of each class member. *In re Baycol Prods. Litig.*, 218 F.R.D. at 211; *Zehel-Miller*, 223 F.R.D. at 663-64. "[E]ach plaintiff's need (or lack of need) for medical monitoring is highly individualized." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (reversing certification of medical monitoring class as abuse of discretion). "[I]ndividual questions concerning patient characteristics and medical history, physician involvement, dosage, causation, and comparative or contributory negligence, eviscerate any notion that common issues predominate" among members of a putative medical monitoring class. *Zehel-Miller*, F.R.D. at 664.

As a result, conducting a medical monitoring inquiry for every Baycol user in the United States (or even just in California) would be impractical and unmanageable. *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *accord Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 652, 661 (M.D. Fla. 2001) (rejecting medical monitoring class as depending "upon the varied circumstances of the class members' exposure and other factors"). The Court therefore should reaffirm its prior ruling and deny certification of this putative medical monitoring class due to the predominance of individual issues. *Id.*

**B. Plaintiff Is Not Typical Or Adequate.**

To be adequate, a party asserting claims on behalf of a putative class must be able to "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. Proc.

23(a); *In re Gen. Am. Life Ins. Sales Practice Litig.*, 357 F.3d 800, 805 (8th Cir. 2004). The related requirement of typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted); *accord Jones v. Allercare, Inc.*, 203 F.R.D. 290, 299-302 (N.D. Ohio 2001).

At a minimum, a person seeking to represent a class "must be part of the class and possess the same interest and suffer the same injury as the class members." *See Amchem*, 521 U.S. at 625 (internal quotations omitted). A person who claims to be "currently injured" cannot represent persons who experienced "exposure only" and do not allege present injuries. *See Amchem*, 521 U.S. at 625; *Foster v. St. Jude Med. Inc.*, 229 F.R.D. 599, 604 (D. Minn. 2005). Furthermore, when an "injury can only be determined on an individual basis," and "is tied to a complex course of conduct engaged in by a defendant over a long period of time," factual differences in the claims and defenses of the putative class mean that no one person's claims are "typical." *In re Baycol Prods. Litig.*, 218 F.R.D. at 206. "The applicability of multiple substantive laws also precludes a finding of typicality." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 460 (E.D. La. 2006).

Here, plaintiff cannot be everything to everyone. If he seeks recovery for his alleged personal injuries, then he is not an adequate representative for persons who seek recovery based solely on exposure to Baycol. *See Amchem*, 521 U.S. at 625; *Foster*, 229 F.R.D. at 604. If he seeks recovery for "exposure only" class members, then he is

not an adequate representative for persons alleging personal injuries. *Id.* He also cannot represent a medical monitoring class (personal injury or "exposure only") because, according to his own expert's testimony, he did not suffer a permanent injury as a result of using Baycol (Trobiani Dep. (Ex. C) at 20:9-14), and will not require "ongoing medical follow-up for any Baycol-related injury" (*id.*, at 21:16-19). In any event, regardless of what claims or relief plaintiff pursues, his individual claims will raise legal and factual issues distinct from those of absent class members. *See supra*, Argument, Part. I.A.1-2.

In short, plaintiff faces the same obstacle encountered by other plaintiffs in pharmaceutical products liability actions: his unique experiences on Baycol do not qualify him to represent a class of persons who also had unique experiences on Baycol. *In re Baycol Prods. Litig.*, 218 F.R.D. at 211; *accord Blain v. SmithKline Beecham Corp.*, 240 F.R.D. 179, 187-189 (E.D. Pa. 2007); *In re Vioxx*, 239 F.R.D. at 459-60. He thus cannot adequately represent "[a]ll persons in the United States who used Baycol ...." Compl. ¶ 24.

* * *

For all of the foregoing reasons, the Court should deny certification due to the overwhelming predominance of individual issues, the lack of typicality, and the lack of adequacy.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CLAIMS.

After denying class certification, this Court should enter summary judgment against plaintiff for three independent reasons.

- Plaintiff's claims fail as a matter of law because the labeling warned of the exact side effects plaintiff alleges Baycol caused. *See Brown v. Superior Court*, 44 Cal. 3d 1049, 1069 (1988); *Barney v. St. Jude Med. Ctr.*, No. C-92-1058 DLJ, 1993 WL 13015619, at *6 (N.D. Cal. Feb. 12, 1993).

- The physician who prescribed Baycol to plaintiff already knew Baycol could cause myalgias. Any purported inadequacy in the warnings for Baycol thus was not the cause of plaintiff's alleged injuries. *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (1992); *Rosburg v. Minn. Mining & Mfg. Co.*, 181 Cal. App. 3d 726, 735 (1986).

- Plaintiff's medical monitoring claim fails because it is not a claim under California law and, in any event, is unsupported by case-specific expert evidence. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1007, 1009 (1993).

Because "there is no genuine issue as to any material fact," defendants are "entitled to judgment as a matter of law" on each and every one of plaintiff's individual claims. *CardioVention, Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 938 (D. Minn. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)).

### A. Baycol's Warnings Were Adequate.

Bayer is entitled to judgment on all of plaintiff's claims because the labeling specifically warned about the very side effects that plaintiff claims to have experienced as a result of using Baycol – muscle aches and pains. *See Brown*, 44 Cal. 3d at 1069.

Under California law, a defendant is not "liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities." *Brown*, 44 Cal. 3d at 1069; *see also Carlin v. Superior Court*, 13 Cal. 4th 1104, 1112-13 (1996). By definition, a drug warning is adequate if it discloses the "precise risk encountered by [the] plaintiff." *See Barney*, 1993 WL 13015619, at *7 (granting summary judgment because warning disclosed of risk).

These basic principles have been reaffirmed in numerous products liability actions. For example, in *Barney*, a plaintiff experienced impeded leaflet motion in a mechanical heart valve, and the valve had to be replaced. The manufacturer's labeling specifically warned of, and the prescribing doctor was aware of, the risk of impeded leaflet motion and associated heart failure, which could require reoperation. *Id*., at *5-6. Because the manufacturer advised the plaintiff's physician of "the precise risk encountered by plaintiff," the warnings were adequate as a matter of law. *Id*., at *4, *7. Accordingly, the court granted summary judgment in favor of the manufacturer and dismissed all of the plaintiff's claims based on the adequacy of the warnings. *Id*.

Here, Baycol's labeling was adequate because it always warned of the exact side effects that plaintiff allegedly experienced – muscle aches and pains. *See Barney*, 1993 WL 13015619, at *7.[4] The Baycol labeling clearly disclosed these potential side

[4] Because plaintiff's own theories about medical causation are incompetent, and Dr. Trobiani's opinion (assuming it is admissible) is limited to myalgia, the only relevant warnings for purposes of this action are those for myalgia (muscle aches and pains). *See Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002); *Cottle v. Superior Court*, 3 Cal.

effects. *See* Baycol package inserts 9/97, 12/99, 7/00, and 05/01 (Exs. F to I, respectively) (disclosing risk that Baycol may cause "myalgia," "myopathy," "muscle aching," "muscle pain," and "muscle cramps"). The labeling for Baycol also always told physicians that Baycol "therapy should be discontinued if . . . myopathy is diagnosed or suspected." *Id*. These warnings were approved by the FDA, which determined that Baycol was "safe and effective" for use as recommended in the labeling, and were clear and direct. FDA Approval Letters (Exs. J to L).

Consequently, these warnings are adequate as a matter of law, plaintiff cannot recover for his alleged injuries, and Bayer is entitled to summary judgment. *Brown*, 44 Cal. 3d at 1069; *Barney*, 1993 WL 13015619, at *7.

**B. All Of Plaintiff's Claims Fail Because His Doctor Was Aware Of The Side Effects Of Baycol Therapy.**

Any alleged inadequacy in the Baycol labeling also is irrelevant because the physician who prescribed Baycol already knew about the potential for muscle aches and pains.

Under California law, prescription manufacturers have no duty to warn of risks "readily known and apparent to the . . . physician." *Plenger*, 11 Cal. App. 4th at 362; *Ramirez v. Plough*, 6 Cal. 4th 539, 556 (1993); *Rosburg*, 181 Cal. App. 3d at 735. Furthermore, if a prescribing physician is aware of a "specific risk," any alleged inadequacy in a warning about that risk "is immaterial." *Cox v. Depuy Motech, Inc.*, No. 95-CV-3848-L(JA), 2000 WL 1160486, at *8 (S.D. Cal. Mar. 29, 2000) (applying

---

App. 4th 1367, 1384 (1992).

California law); *Rosburg*, 181 Cal. App. 3d at 735; *see also Huntman v. Danek Med., Inc.*, No. 97-2155-IEG RBB, 1998 WL 663362, at *5 (S.D. Cal. July 24, 1998) (granting summary judgment in favor of defendant because physician possessed "independent knowledge of the risks") (applying California law).

In *Rosburg*, the plaintiff complained that a manufacturer of breast implants failed to warn adequately of the risk of spontaneous deflation. 181 Cal. App. 3d at 730-31. The plaintiff's physician, however, testified that he already knew of the danger of spontaneous deflation. *Id.*, at 730-31, 735. The court concluded that "no harm could have been caused by failure to warn of a risk already known" and affirmed judgment for the manufacturer. *Id.*, at 735.

Similarly, in *Plenger*, the court of appeal affirmed the grant of summary judgment where plaintiffs claimed that a wrongful death resulted from an infection caused by an intrauterine device. 11 Cal. App. 4th at 361-62. The court explained that plaintiffs could not prevail on a failure to warn claim because the manufacturer had warned physicians in the package insert of a "risk of pelvic infection," and because "the risk of death from any untreated infection was a matter of general and elemental medical knowledge." *Id*., at 362 (holding that there is no duty to warn of a risk "readily known and apparent to the . . . physician").

In this case, Dr. Jing, the physician who prescribed Baycol, was aware that the possible side effects of Baycol included muscle pains, myalgias, and myopathy. Jing Dep. (Ex. A) at 18:24-20:10. Indeed, Dr. Jing believed "muscle aches" – "also known as myalgias" – were the "[m]ost common side effect" associated with statin medicines such

as Baycol. *Id*., at 18:9-17. Dr. Jing's "common practice" was "to inform patients about the possible side effects of medicines" (*id*., at 22:21-24), including "the most common side effects for statins" – "muscle aches" (*id*., at 23:2-11).

The evidence on Dr. Jing's familiarity with myalgia as a potential side effects of Baycol is not subject to reasonable dispute. Plaintiff therefore lacks evidence that a failure to warn caused his alleged injuries, and all of his claims fail as a matter of law. *See Brown*, 44 Cal. 3d at 1072 (breach of warranty); *Valentine*, 68 Cal. App. 4th at 1480-81 (strict liability and negligence); *Rosburg*, 181 Cal. App. 3d at 735; *Plenger*, 11 Cal. App. 4th at 362; *Motus v. Pfizer, Inc.*, 196 F. Supp. 2d 984, 999 (C.D. Cal. 2001) (breach of warranty and strict liability).[5]

**C. Plaintiff's Medical Monitoring Claim Is Not Viable.**

Plaintiff's complaint includes a claim for "medical monitoring." Under California law, medical monitoring "is not a separate tort but simply an item of damages." *See San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 914 n.18 (1996); *Potter*, 6 Cal. 4th at 1007. For this reason alone, Bayer is entitled to judgment on this claim.

But even if medical monitoring were a stand-alone claim under California law, plaintiff's claim here still would fail as a matter of law. Plaintiff cannot be awarded medical monitoring damages under California law unless a case-specific expert opines:

---

[5] California does not recognize a claim for defective design of the prescription drug based on a theory of strict liability. *See Brown v. Superior Court*, 44 Cal.3d 1049, 1065 (1988) (adopting Restatement (Second) of Torts § 402A, comment k).

> that the need for monitoring is a reasonably certain consequence of the exposure, based upon a consideration of at least the following five factors: (1) the significance and extent of the plaintiff's exposure to the chemicals; (2) the relative toxicity of the chemicals; (3) the seriousness of the diseases for which plaintiff is at an increased risk; (4) the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of members of the public at large of developing the disease; and (5) the clinical value of early detection and diagnosis.

*Potter*, 6 Cal. 4th at 1006.

Plaintiff's PTO 114 expert has not and cannot provide the opinions needed to satisfy any of the *Potter* factors. *Potter*, 6 Cal. 4th at 1006, 1009; *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096, 1111 (2003); Trobiani Dep. (Ex. C) at 20:9-14, 21:16-19. Plaintiff therefore cannot recover medical monitoring damages, and his purported medical monitoring claim should be dismissed.

**CONCLUSION**

For these reasons, defendant respectfully requests that the Court deny class certification, and enter summary judgment in its favor and against plaintiff Julius Hughes on his individual claims.

Dated: December 4, 2007

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/

Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine Valerio Barrad
Christine K. Son
Nitin Reddy
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

*Counsel for Bayer Corporation and Bayer AG*