**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *Julius Hughes v. Bayer AG, et al.* | : | Case No. 02-0058 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DENY CLASS CERTIFICATION AND FOR SUMMARY JUDGMENT**

## I. INTRODUCTION.

In response to Defendants' Motion to Deny Class Certification and for Summary Judgment, Plaintiff, Julius Hughes, abandons his class claims. The Court thus should grant Defendants' motion to deny class certification. Although not abandoned, Plaintiff's individual claims should also be dismissed. This is because Plaintiff cannot overcome two dispositive facts:

First, Plaintiff does not (and cannot) dispute that the applicable Baycol labels explicitly warned of the risk of myalgia – the very side effect that Mr. Hughes allegedly encountered. As a matter of law, a drug warning is adequate if it discloses "the precise risk encountered by [the] plaintiff." *Barney v. St. Jude Med. Ctr., Inc.*, No. C-92-1058, 1993 WL 13015619, at *6-7 (N.D. Cal. Feb. 12, 1993).

Second, Plaintiff's prescribing physician, Dr. Raymond Jing, knew that Baycol could cause myalgia when he prescribed Baycol to Mr. Hughes. Any arguable deficiency in the warning is immaterial if the prescribing doctor is aware of the risk of the very injury that the Plaintiff allegedly suffered. *See Cox v. Depuy Motech, Inc.*, No. 95-

CV-3848, 2000 WL 1160486 at *8 (S.D. Cal. Mar. 29, 2000); *Rosburg v. Minn. Mining & Mfg. Co.*, 181 Cal. App. 3d 726, 735 (1986).

Plaintiff does not dispute any of this. Instead, he make three arguments that are based on nothing but his "speculation, conjecture or fantasy." *Wilson v. Int'l Business Machines Corp.*, 62 F.3d 237, 241 (8th Cir. 1995). Such arguments, however, are insufficient "to withstand the motion for summary judgment." *Id.*; *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment").

First, Plaintiff argues that his prescribing physician did not really know about the risk of myalgia associated with Baycol, and so was not a "learned" intermediary. But Dr. Jing's own testimony shows that "when [he] prescribed it to Mr. Hughes" he was aware that "myalgias" were the "[m]ost common side effect" associated with Baycol. Deposition of Raymond Jing, M.D. (Ex. M[1]) at 18:9-19:2.

Second, Plaintiff argues that Defendants failed to satisfy their duty to warn because a "specific" warning is required. But the Baycol label specifically and repeatedly warned of the precise side-effect – myalgia – that Plaintiff allegedly experienced. Moreover, at the time he prescribed Baycol, Dr. Jing was aware that myalgia was a possible side-effect of the drug.

[1] Exhibit M is attached hereto; all other references are to exhibits to Bayer's opening brief.

Third, Plaintiff argues that Defendants' warnings were inadequate because Defendants over-promoted Baycol. However, Plaintiff cites no evidence in support of this bald assertion. This unsupported claim is not only immaterial and speculative innuendo; it is factually wrong.

In short, there is no disputed issue of material fact here; Defendants satisfied their duty to warn because Baycol's labeling warned of myalgia, and Dr. Jing was aware of that warning. Summary judgment is therefore appropriate.

## II. PLAINTIFF FAILS TO DISPUTE THAT THE BAYCOL LABEL WARNED OF MYALGIA AND THAT HIS PRESCRIBING PHYSICIAN WAS AWARE OF THE RISK OF MYALGIA.

Defendants' motion sets forth the very explicit text in the FDA-approved Baycol labeling that warned physicians of the risk of myalgia, *the very injury alleged by Plaintiff*. *See* Baycol package inserts (Exs. F, G, H, I) (disclosing risk of "myalgia," "muscle aching," muscle weakness," "muscle pain," and "muscle cramps"). Such an explicit warning in the labeling is adequate as a matter of law. *See Barney*, 1993 WL 13015619, at *6-7 (applying California law) (granting summary judgment because warning disclosed risk); *see also Temple v. Velcro USA, Inc.*, 148 Cal. App. 3d 1090, 1095 (1983) (holding "clear, understandable and completely unambiguous" warning adequate as a matter of law).

Defendants also presented undisputable evidence that Plaintiff's prescribing physician *knew* that myalgia was a possible side effect of Baycol when he prescribed it to Mr. Hughes. Indeed, Dr. Jing testified that the "[m]ost common side effect that [he] encounter[s] are muscle aches" "[a]lso known as myalgias." Jing Dep. (Ex. M) at 18:9-

17. Dr. Jing further testified that he was aware that myalgias were a possible side-effect when he prescribed Baycol to Mr. Hughes. *Id*. at 18:24-19:10.

As Defendants were under no duty to warn of risks "readily known and apparent to the … physican," Plaintiff's claims premised on a failure to warn – the core of each separate claim – fail as a matter of law. *See Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (1992).

## III. PLAINTIFF'S ARGUMENTS ARE UNAVAILING.

Plaintiff does not dispute these facts or the law. Instead, he makes three arguments, none of which raises a triable issue of material fact.

### A. Dr. Jing was a learned intermediary.

Plaintiff argues that the knowledge of his prescribing physician should be disregarded because he was not a "learned" intermediary. Pl.'s Br. at 5-9. Plaintiff points to two things in support of his belief that Dr. Jing was not adequately informed of the risks of Baycol therapy.

First, Plaintiff believes that Dr. Jing was not a "learned" intermediary because he did not recall a "multitude of information that should have been given to him by" Baycol sales representatives. Pl.'s Br. at 7-8. But this misses the point. At best, this would show only that Dr. Jing did not remember any Baycol sales representative telling him various things; more significantly, it does not show that Dr. Jing was unaware of the risk of myalgia associated with Baycol therapy. Moreover, because Dr. Jing did not recall any specific conversations with Baycol sales representatives, *see* Jing Dep. (Ex. M)

at 58:8-59:24, it is unsurprising that he does not remember details about what Baycol sales representatives did or did not tell him.

Second, Plaintiff argues that Dr. Jing was not a learned intermediary because he was not "adequately informed" of the "differing rate of adverse events associated with Baycol compared to other pharmaceutical products on the market." Pl.'s Br. at 8, 10-11. Based on Dr. Jing's answers to a series of hypothetical questions, Plaintiff argues that, had Dr. Jing known about the increased adverse events, he "may not have prescribed [Baycol] to Mr. Hughes." *Id*. at 12. This, however, is insufficient to overcome summary judgment.

Plaintiff's hypothetical questions and Dr. Jing's responses rest on a scientific and legal flaw. The greater risk premise that was presented to Dr. Jing reflects a conclusion drawn from data – AERs – that do not support that conclusion as a matter of sound science. In its *Daubert* ruling, this Court recognized that AER data are singularly ill-suited for such purposes, and reliance on such data to evaluate the adequacy of warnings is impermissible. *See In re Baycol Prods. Litig.*, 495 F. Supp. 2d 977, 1015-17 (D. Minn. 2007). Moreover, FDA regulations bar such misuse of comparative AER data in labeling. 21 C.F.R. § 201.57(g)(4) and (c)(3)(v) (2003) and 21 C.F.R. § 314.126(e) (2004).

Thus, Dr. Jing was presented in deposition with a wholly unrealistic hypothetical: assume it were lawful to present unreliable data, and assume that data which is not reliable were reliable. Dr. Jing's speculation that he may have acted differently in response to such a flawed proposition lacks the necessary evidentiary

foundation.[2] No weight may be accorded the hypothetical speculation of a physician who was asked to assume that which is not true, and who was not presented with a complete context and explanation of AER data and given an understanding, as was presented to this Court in the *Daubert* motions, of why that data is unreliable for comparative purposes.

Moreover, Dr. Jing knew that Baycol, like all statins, carried a risk of myalgia. His speculation about how he might have acted if informed of other risks is immaterial. *See Plenger*, 11 Cal. App. 4th at 362; *Cox*, 2000 WL 1160486 at *8; *Rosburg*, 181 Cal. App. 3d at 735.

In any event, Dr. Jing never testified that he would have acted differently if he had been presented with the information that Plaintiff claims should have been presented to him. Instead, Dr. Jing repeatedly testified that he would "consider" the additional data in "weigh[ing] the benefits and the risks" of Baycol therapy. *See* Jing Dep. (Ex. M) at 61:3-15, 65:8-67:21, 73:6-13. Thus, even if Plaintiff could show that the comparative data were reliable (and they are not), he still cannot show that Dr. Jing would have done anything differently.

[2] Plaintiff also argues that he would have taken a different medication without the same side effect if he had known that Baycol would cause him muscle pain. Pl.'s Br. at 3. This too cannot defeat summary judgment. Plaintiff relied on Dr. Jing to prescribe him Baycol, and Dr. Jing testified that he was aware that Baycol, like all statins, could cause muscle pain. Jing Dep. (Ex. M) at 18:9-17.

**B. Baycol's labeling specifically warned of myalgia.**

Plaintiff next argues that even if Dr. Jing was "aware of the general risks associated with Baycol, it would not relieve Defendants of their duty because a specific warning is required." Pl.'s Br. at 8. But this argument ignores the fact that the Baycol label repeatedly warned of the specific injury plaintiff allegedly suffered – myalgia. As Defendants explained in their moving papers, the Baycol label specifically warned physicians (and patients) that "myalgia," "muscle aching," muscle weakness," "muscle pain," and "muscle cramps" were possible side-effects of Baycol therapy. These explicit warnings in the label are adequate as a matter of law. *See Barney,* 1993 WL 13015619, at *6-7; *see also Temple*, 148 Cal. App. 3d at 1095.

Moreover, Dr. Jing was aware of this specific risk – he testified that he knew that Baycol could potentially cause muscle aches and pains, also known as myalgia. Jing Dep. (Ex. M) at 18:24-20:10.

**C. There is no evidence to suggest that Baycol was over-promoted.**

Third, Plaintiff argues that Baycol's warnings were insufficient because Defendants over-promoted Baycol. However, Plaintiff cites no evidence in support of this bald assertion. Such an unsupported claim is insufficient to defeat summary judgment. *Wilson*, 62 F.3d at 241 ("[T]o withstand the motion for summary judgment, [plaintiff] must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy") (internal quotations omitted).

Plaintiff does not point to a single Bayer document or testimony of a single Bayer witness in support of his argument that Bayer over-promoted Baycol. Instead, he once again points to Dr. Jing's answers to hypothetical questions and Dr. Jing's testimony that he remembers seeing literature indicating that Baycol was superior to other statins. Pl.'s Br. at 10-11. But the fact that Dr. Jing saw literature indicating Baycol's superiority does not show that Baycol was over-promoted. Moreover, Dr. Jing did not testify that he was given this literature by a sales representative. He merely testified that he remembered reviewing such literature. *See* Jing Dep. (Ex. M) at 63:4-63:13. Nor did Dr. Jing ever testify that any Baycol sales representative over-promoted or otherwise pushed him to prescribe Baycol.

**IV. PLAINTIFF'S MEDICAL MONITORING CLAIM FAILS.**

Defendants explained in their moving papers that Plaintiff's claim for medical monitoring fails because (1) medical monitoring is not a stand-alone claim under California law; and (2) Plaintiff lacks the requisite expert testimony to support a medical monitoring claim. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1006-7 (1993).

Plaintiff does not respond to either of these points. Indeed, his opposition brief does not even mention medical monitoring. Instead, Plaintiff points out that his case-specific expert, Dr. Steven Trobiani, opined that he "suffered from myalgia as a result of his ingestion of Baycol." Pl.'s Br. at 13. But this is irrelevant. Defendants have not (yet) challenged Dr. Trobiani's opinions. In any event, even if Dr. Trobiani's opinion were admissible, it would not meet the requirements set forth in *Potter*. Among other

things, Dr. Trobiani does not opine that Mr. Hughes suffered any sort of continuing or latent injury for which monitoring is required. *See* Deposition of Steven Trobiani (Ex. C) at 21:16-23.

**CONCLUSION**

Plaintiff has raised no issue of material fact for trial. Defendants therefore respectfully request that the Court enter summary judgment in favor of Defendants and against Plaintiff Julius Hughes on each and every claim asserted in his complaint.

Dated: February 11, 2008

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Thomas P. Hanrahan
Catherine Valerio Barrad
Nitin Reddy
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No. 101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*

CERTIFICATE OF SERVICE

I, David L. Barlett, certify that true and correct copies of the foregoing Defendants' Reply Brief in Support of Motion to Deny Class Certification and for Summary Judgment and exhibit were electronically filed and served on February 11, 2008.

[signature]
______________________________